Tracey Staudner v. Robinson Aviation, Mr. Stroud. May it please the court. My name is Tracey Stroud and I represent the appellant Patrick Staudner. I will explain to this court why the district court should not have dismissed this case for lack of subject matter jurisdiction. The record indicates that my client, Mr. Staudner, was a former air traffic control specialist at the New Bern Airport employed by Robinson Aviation, which I will refer to RVA in this argument. He worked for them for 14 years and the discharge notice discharged him after 14 years of service because he did not lock the door. He did not stop immediately after entering the airport parking lot. He did not park in the employee designated parking and he did not lock his car door. Now, the record indicates that Mr. Staudner was a good air traffic controller. All his performance reviews for the 14 years, even the one done by the supervisor who discharged him from employment, found him to be fully successful in his job, yet RVA had accused him of not following policy and terminated his employment, which you will find at JA-13. It is further not disputed in the record that Mr. Staudner and his supervisor, Howard Modlin, did not get along with one another. Does all of this impact your argument about jurisdiction? Because I mean, unless I think we're familiar with the facts in the record. Yes, Your Honor. I really want to understand why the district court thought this was a jurisdictional issue, that it lacked jurisdiction. Your Honor, the facts that I'm reciting, which I won't, since you're familiar with the record, I won't go into any further detail, indicate and the district court said in its summary judgment order that the fact that the personal animus of Howard Modlin indicated that this was a discharge without just cause, which therefore would show that this was meritorious grievance, which PACCO, the union, should have taken to arbitration, and it was a genuine issue of fact that state... Did the district court dismiss it because the district court thought it lacked jurisdiction because appellant had not exhausted remedies? That's correct, Your Honor. How is exhaustion jurisdictional? I don't think jurisdiction can be waived here. I think the district court did have jurisdiction. I'm not sure why you're not fighting about that part of the district court's decision, jurisdiction. Your Honor, I am fighting about that, and the reason is that because my client attempted to exhaust his remedies. That's all that he had to do. Under 301 of the Labor Management Relations Act, you can bring a breach of duty of fair dealing and wrongful termination, which is a hybrid action, and all you have to do, the long line of case law says that the jurisdiction, in order for there to be jurisdiction of the federal court, that there has to be an attempt to exhaust the jurisdiction. That's right. That's case law. That's what I'm saying. That's case law. Case law can't give a court jurisdiction or not. Only Congress does that. So I think your stronger argument is exhaustion has nothing to do with jurisdiction. The district court had jurisdiction here, regardless of whether or not the remedies were exhausted, and that exhaustion of remedies is an affirmative defense, not a jurisdictional thing. Exhaustion, jurisdiction doesn't come through case law. It comes through Congress. Right. And under Section 301 of the Labor Management Relations Act, there the jurisdiction exists. Right. I'm sorry. Go ahead. Jurisdiction does exist there. Well, I guess regardless of how you characterize it, is it clear? I mean, what's your argument that your client did exhaust in this case, that he did what he was required to do? Your Honor, the evidence in the record shows that the union instructed him to take the grievance on his own at Step 1. They helped him very perfunctorily at Step 2 by regurgitating an email that he had sent to them. Step 3, he handled on his own. Step 4 would have been the arbitration. My client asked to take, for the PACO to take it to arbitration. It refused to do so. According to the terms of the collective bargaining agreement as PACO interprets it, PACO contends that all it had to do was consent for my client to take it to arbitration, and then my client would be able to do that. Mr. Stoudner would be. When he went back to RVA, RVA said that our contract, that the collective bargaining agreement is a contract between RVA and PACO only, and Mr. Stoudner had no right or ability to take it to arbitration. Which of them do you think was right? We know what happened, but which way do you read the agreement and why? Your Honor, I believe that RVA did not have to participate in arbitration if PACO was not involved. So you read, as you read this agreement, it's basically that the employee can go through the first three steps of the grievance process with or without the union participating, but for arbitration, the union needs to participate, at least represent, not just consent. That's how you read it. Yes, Your Honor, I do, because at that point, my client would have had no ability to go to arbitration on his own. Can I just ask you just a kind of a factual, practical question? Is it your understanding that that's pretty standard for CBAs to make the union the gatekeeper at that last arbitration step, even if in the earlier internal grievance procedures, the employee can proceed alone? Yes, Your Honor, that is my understanding as, of course, it makes sense for judicial economy in the grievance procedure for the union who is exclusive representative of the employee to screen out grievances that are not meritorious and would not be successful at arbitration. Okay, so let me just ask you, just assuming, just purely hypothetically, that this CBA does not allow an individual employee to arbitrate a claim against his employer without union participation. So then we'd be under that first exception, right? The first exception to exhaustion, the union breaches the duty of their representation and it causes the failure to exhaust. And as you said, I'm really just trying to dispute a fact as to whether there was such a breach in this case. Yes, Your Honor. So we would send it back to the district court and say resolve that question to see whether or not the failure to exhaust was excused here. We, Your Honor, you could do that or we could take, you could remand and take it back, find that the court had jurisdiction and because the court, the district court, had already ruled that there was a genuine issue of material fact as to whether there was a breach of duty that a jury should decide. I'm sorry. One way or another. Right, that a jury should decide if there was a breach. I didn't suggest it had to be a bench drive. One way or another, we need that question to be resolved. Yes. So if there's jurisdiction, send it back to resolve that issue. Yes. What if you read the agreement the other way? If you read it the way the employer read it and in fact your client, hang on, I'm going to get mixed up. The other way would be your client had every ability to go ahead and arbitrate this claim himself and the employer was wrong when they said otherwise. Then what's the outcome of this case? Your Honor, I don't, the employer was not wrong and the case law from the fourth circuit, a district court case from Maryland in this circuit and a second circuit case and has said that because this is a contract, there's privity between the union, that he would not have been able to compel them to arbitration. So you don't have any, you don't read the contract the other way. If you read the, because it seems to me you have a pretty good answer that if the employer, if you read it the other way and your client was entitled to arbitrate without the union's participation, then the employer repudiated and that's the other exception to exhaustion. Your Honor, yes, which I make in point three in my brief that we can win either way. We can win either on a breach of a duty of fair representation, which allows for the question of repudiation either way that the agreement is interpreted. That really becomes immaterial. Can I ask you one last question about different ways one might read this agreement? Are you arguing at all that forget excuses for failing to exhaust, but this collective bargaining agreement doesn't actually make, doesn't have any exhaustion requirement? There is no requirement that the employee exhaust by going through this three-step process and then going to arbitration? Or do you concede that on the face of the agreement you do have to exhaust and what you're talking about is the exceptions? Well, Your Honor, I don't, I don't know that the agreement has expressly stating that there's a failure, that you must exhaust remedies, but of course case law has said that you must at least attempt to exhaust. No, the case law says you have to attempt to exhaust a required grievance process. It doesn't say that if there's no provision for a grievance process, you have to find one. That's correct, Your Honor. But there, I mean, there was one here, a four-step, very classic example in, found in many collective bargaining agreements, and my client did everything he could, looked at every, you know, look to the employer, look to the, the union in order to try to exhaust, and then had no other choice but to file the 301 action in order to have a remedy in this case. So just to follow up on Judge Harris's question, you said, I guess, in your statement that he had no other choice. What would have prevented your client, and I know you disagree that he could proceed to arbitration without the union, but assume that he could, what would have prevented your client, even in the face of the employer's refusal to participate, simply go to the arbitrator, file a petition for arbitration, and let the arbitrator decide whether or not the employer's position was correct? Your Honor, this arbitration is, and it's mentioned in the collective bargaining agreement, it is overseen by the FMCS, which is Federal Mediation and Conciliation Service, which is an agency of the Federal Government, under 29 CFR part 1404D. It says that the arbitrator in FMCS has no ability to be able to compel a party to arbitration or to compel arbitratrility of issues. Therefore, my client would not have been able to appear before the arbitrator for to make any ruling. No ability to compel a party to arbitration, but in the absence of a party, could it enter an order, an award, even without defense by the employer? You don't think that could happen? No, Your Honor, I do not. All right. Thank you very much. Thank you. Thank you. Mr. Guerin? Thank you, and may it please the Court. My name is Lance Guerin. I represent the Professional Air Traffic Controllers Organization. I'm anticipating some questions about whether this is a jurisdictional case or a 12B6 case. I want to first state that we are not here about any novel legal concept. In 1960, the Supreme Court issued what's referred to as the Steelworker Trilogy, three cases involving United Steelworkers. And from that point, the Supreme Court has endorsed arbitration over litigation as the preferred means of resolving grievances in the private sector labor management relations. Even in the most recent Supreme Court term, in three cases that were consolidated, the main case being Epic Systems Court v. Lewis, the Supreme Court went even further and said that class actions and employee-only or non-union settings where employees sign arbitration clauses, they must go through arbitration. So this has been consistent for 58 years where the Court pushes litigation to arbitration where that's available. Can you just show me where in the agreement it makes going to arbitration mandatory? Because I'm reading it as saying an employee shall have the option of utilizing the unfair labor practice procedures as provided by law or other such avenues as provided by law, so going to court, or the grievance arbitration procedures contained in this article. And I just can't find the language that makes it mandatory to go through this grievance process before you go to court. So in 1967, in Bacow v. Sipes, the Supreme Court interpreted Section 301 of the Labor Management Relations Act to require administrative exhaustion. Where it's required under the CBA, not if it's not required as a matter of contract. They're just saying if you've agreed to go to arbitration, you have to go to arbitration before you go to court. Well, this and to, in response to, I believe it was your question to Ms. Stroud, this contract is unique. As a practitioner who negotiates hundreds of contracts a year, this contract is unique. Yeah, it's missing the mandatory arbitration provision. Well, no. It has a mandatory arbitration provision, but it has the ability of an employee to go on its own or her own. That is, I will say that that is unique. Okay, where's the mandatory arbitration provision? Where does it say you have to go through arbitration? It's the final step of the grievance procedure. But where does it say you have to use the grievance procedure? What it actually says expressly is you have the option. I also have not seen a lot of this. You have the option of taking advantage of any such avenue that is provided by law or, not after, or the grievance arbitration procedures contained in this article. Well, I think if we read the Steelworker Trilogy, as well as Bacchus v. Sipes, it would say that in order to get to 301, you have to first exhaust the... Even if you haven't promised to do that under the CBA. I just, that's not how I read the case. I believe that that... I believe that those cases, this contract could say you have no obligation to go through arbitration. To be clear, we are not requiring you to. And even so, under Steelworkers, you would be required to. My understanding of the court's preference is to go through arbitration. I agree that there's a preference. So you are conceding that there is nothing in this agreement that freestanding would require you to go through arbitration. You need the case law to get that. No express language, Your Honor. Okay. And you're using the case law also to get jurisdiction. I don't understand how case law can create, or not, jurisdiction, as opposed to Congress. I would... Please, go ahead. It's... I think that it's a unique issue. I think it may fit more under a 12B6 motion. And... So, how did the... Did the district court have jurisdiction here? I don't think they did because... Why not? In order to have jurisdiction, they had to have a valid 301 claim before them. And they did not because of Vaca v. Sipes requires exhaustion to the grievance process. What did the district court say about why it didn't have jurisdiction? Because Mr. Staudner failed to exhaust his remedies through the grievance process. And he didn't do that even though he started the process. And so, where do... What was your answer again about how exhaustion is... Jurisdictional. Jurisdictional. Because in order to get before the district court, Mr. Staudner would have to demonstrate that there's about a 301 suit. The court had jurisdiction, subject matter jurisdiction, under Section 301. And it's not under Vaca v. Sipes. So, if we were to conclude that exhaustion is not jurisdictional, but is an affirmative defense... Yes. Did you preserve that affirmative defense somewhere? I believe that we did. I would have to check the record. But I think that one of the things that... So, in an answer, you... Pleading you would have... Well, so, I don't know that it was in the answer because the facts were not borne out until discovery. When we learned that Mr. Staudner had actually filed a demand for arbitration. So, the assertion by appellant that he was in some way harmed by having to go through arbitration, he actually started the process, filed the demand for arbitration, got resistance from RVA, sought the union's approval to go on his own. The union gave that approval per the agreement. RVA then again rejected that move. And as Ms. Stroud properly noted, FMCS cannot compel arbitration. However, the 301 action that he should have filed should have been an action to compel arbitration. That would have been the correct action to bring because that's the process. Can I ask, just to be clear, so your reading of this agreement, of the CBA, is that it doesn't actually require that you do any of this agreements process. The case law requires that you do it. But that if you do it... It's a genuine question because I can't keep this straight. So, your position is that an individual cannot arbitrate without, no, can arbitrate without the union participating? So, my reading of the agreement is that the employee can go through the first three steps with or without the consent of the union. But in order to go to arbitration, they need the union's consent. So, the right of individual representation does not include the right of taking the matter to arbitration unless the union agrees to do so, means just unless the union consents. Yes. Yes. And the reason for that, and I don't have the exact case number, but the Janus versus AFSCME decision, which is a popular decision, I believe it's on page 16. Justice Alito discusses how the grievance procedure belongs to the employer and the union, not to the employees. So, that's why that language in Article 19 is fashioned the way that it is. The union has... The employees have the right to go through the process on their own, but the union has the right to participate or supervise or view what's going on. And you'll note that in Article 19, it says that if the employee is not represented by the union, any adjustment of the grievance shall be consistent with the terms of the collective bargaining agreement. And that's because they can go it alone, but they can't get a remedy. I think there's a way of reading that last sentence so that it applies to... This is a paragraph about your right to go on your own through the grievance process. And the paragraph on the left applies to that, that if you go through these first three steps of the grievance process by yourself, any adjustment of the grievance will be consistent with the terms of the CBA. But then there is this sentence in the middle, which the district court, I don't believe, mentions, saying that all of this right to go by yourself through the grievance process runs out when you get to arbitration. By the time you get to arbitration, the union has to agree to do so. And that does not seem like a natural way of saying the union has to consent to you going by yourself. The union has to do it, do the arbitration. But I think that the contractual construction would dictate otherwise. That last sentence is last for a reason. If it only applied to the first three steps, I think it would be before that sentence regarding if an employee goes to arbitration on their own, they need the union to consent. I know it doesn't say consent, but the union would have to give its blessing. And so I think that's why the sentence is last. It applies to all four steps. Can I ask you the same question I asked your colleague? And she started to read me the Second Circuit case and I didn't let her finish. But it does seem that there is a lot of case law approving this kind of bifurcated process in which an individual employee can go through the preliminary internal grievance process by him or herself. But for arbitration, the union has to participate. That's what was in front court in Vaca. That's what the Second Circuit is talking about in the case that's actually cited by the court. That that kind of bifurcated process is very common. Is that your experience? I noticed my red light, Matt. Answer the question. Thank you. I will tell you again that this contractual language is the extent of the rule. Most contracts are actually negotiated to include union representation even at the early stages. Because again, as Justice Alito said in Janus, the grievance procedure belongs to the union and the employer. Thank you very much. Thank you. Good morning. May it please the court. My name is Michael Lord. I'm appearing on behalf of the Applee Robinson Aviation, which is known as RVA. And I'd like to start with some questions that I'm anticipating anyway. I do read the contract as requiring that the employee, Mr. Staudner, pick an avenue for redress and then see it through. So the CBA specifically contemplates that you can start the process and then leave before you're finished. It says, if an employee initiates a grievance procedure and fails to appeal a decision to a higher level, the decision rendered prior to failure to appeal shall be formal and binding. So the one thing we know is you can start and not finish. Correct. And so if we flip a page to section four, which is the one you began with, employees shall have the option. So this is really an election of remedies. So Mr. Staudner had, when he was fired, he had a number of remedies. First remedy was to file a ULP charge, unparalleled practice charge, with the NLRB. He chose not to take that path. He could have also decided to follow the grievance procedure. He did so. And so once he starts, he needs to finish. No, then what is this sentence doing in the contract that says, if an employee initiates a grievance procedure and doesn't finish, the last thing he does is the final and binding decision. It specifically addresses whether or not an employee might start and not finish. And it says, sure, go ahead. But the last thing we say is final and binding. I don't understand where it says he has to finish if he starts. Well, the requirement for finishing is the exhaustion, is the Supreme Court's direction that you need to see it through. And this contract is structured in such a way, again, you can go the ULP route or you can use the grievance route. And Mr. Staudner followed it. He took steps one, two, and three. He had the option under another article to skip all the way up to arbitration. But he decided to take all the steps. When it got to arbitration, he had the right. And it reads in the last part of section six, is that the employee may present the grievance. So getting back to the questions you were asking Paco's lawyer, this is his right. This is his right of presentment, right here in the agreement. He chose to do that. He presented that grievance. But when it got to RVA, when he was trying to find out who was going to be the arbitrator from the panel that was provided by the service, RVA's position at the time was, we don't read the contract as allowing you to require us to go to arbitration on your request. And so then he stopped. Is that still your reading of this? No, so another question. Okay. Excuse me. So you are not taking, at the time, your position was that an individual employee cannot arbitrate without participating. But now you've changed your mind. Down below, Your Honor, our position was that this language allowed Mr. Staudner the privilege to ask RVA to adjust his grievance directly. It's kind of like a Section 9 right that an employer has. The problem with that is, if an employer adjusts grievances without the union, that has a whole host of liability along with it. This is a genuine question because there are different parties in it. So at the time, your position was that our agreement to arbitrate is only with the union. It does not extend to an individual. We have no agreement with individuals. If the union's not here, we're not arbitrating. Is that still how you read the agreement? No. Yes or no? Okay. So now you think he did have a right to be there without the union. Correct. And here's the reason why. Our position was along the lines that... Can I just ask whether you had ever read it that way before? You didn't read it that way at the time. Were there other occasions where you had agreed to arbitrate against individuals who were arbitrating without the participation of the union? There's no record evidence of that. So this would be the first time... Mr. Sautner was the only one involved in any grievance at the site. And so from RVA's position was, it took a construction of the language that you can find in case law, that he had the privilege to ask for it. We had the discretion to consider it, and we exercised our discretion not to accept it. And then what? What was he supposed to do? Then what is exactly what we've heard before, is file a motion to compel. So that would have been the best remedy for him, but he had other remedies in addition to that. Isn't that sort of weird? Like the whole point of exhaustion, right? You can require someone to exhaust their remedies, and if they don't, they can't go to court. But if they show up and say, I'm ready to arbitrate, and you say, well, we're not coming. How can you then turn around when he goes to court and say, you should have arbitrated? That just seems so counterintuitive to the sort of equitable nature of this exception. But look, if you try to arbitrate and the employer doesn't show up, the employer can't then turn around, just sort of stop from saying, why didn't you arbitrate? Why didn't you force us to arbitrate? Why didn't you undertake additional legal action to drag us to the table? Two things, two responses to that, Your Honor. First, from the employer's standpoint, RBA, it took a reasonable, rational approach to the request. The employer's construction of the language was wrong. So hindsight tells us that the construction was wrong. It's kind of like a good faith sort of a thing. We didn't repudiate because we thought it meant one thing, but we were wrong. Exactly. Is that, I mean, repudiation, does repudiation require bad faith? Isn't it enough that he tried to arbitrate and you said, we're not coming? I think the standard for repudiation is just what the VACA court said. It needs, well, it needs to be total, needs to be an egregious breach. When I was struck by- That's when the union reaches its duty of fair representation. No, I believe that it reaches the repudiation issue. There is a decision that came down a month before our briefs, but it was the National Players Association versus NFL. And it has a discussion about what repudiation is. And repudiation isn't just a breach of the collective bargaining agreement because, of course, the only reason we're here is because there's an alleged breach. It has to be well above that. It has to destroy the mechanism of the grievance process. Here, remember, our VA participated in steps one, two, three. When it got to the point where Mr. Staudter made his request for arbitration, there was an immediate response. So he wasn't ignored. That we're not coming. Right. And then when he asked again, there was a- Then it was again. Seriously, we're not coming. And that is not saying- That you're not coming. We don't, it's not a total, it's not an egregious breach that goes to the court. We're not showing up for arbitration. And so we get back to exactly at JA-134, which you had asked a plaintiff what his position was. JA-134 is fatal. JA-134 is Mr. Staudter in his own words saying, this is how I read the agreement. And his question was, now what? Well, let me ask a follow-up to that because I thought the district court's position in this case was that Mr. Staudter could proceed ex parte in the arbitration proceeding. And the rules at least seem to suggest that FMCS allows, the procedural will say that the arbitrator can proceed in the absence of any party who after due notice fails to be present or to obtain a postponement unless prohibited by law. So why would he have to go to the court after having received notice? Why couldn't he go to the arbitrator? You don't show up, the arbitrator proceeds. Exactly, Your Honor. So which is it? Does he have to go to court or can he proceed ex parte? I think he had multiple choices. What the answer would be, I don't know. Because when Mr. Staudter asked what now, here's the plenipotentiary of options he had. Go to federal court instead of seeking a 301 action. File a motion to compel arbitration. He could push the arbitration before the federal service to get that decision. He could also go a different route. He could file an unfair labor practice saying that the employer breached the contract. He could file an unfair labor practice that the union didn't do that. But in all these options, the key thing is you're going to get to the issue of arbitrability. You're going to get there. Now, the irony is that we finally got to the issue of arbitrability, but we got it before the district court judge in this hybrid 301 suit. The problem is that Mr. Staudter got the answer he did not want to have. But we finally got to that point. So he had these options. He decided not to take any of them. He took the 301 route, but we finally got to the issue, what does this contract say? And the contract, I believe, can only be reasonably read that he has the right to present this grievance. All right. Thank you, Mr. Lord. Thank you. Mr. Rowe. Thank you. Please support. Your Honor, it is our contention that Mr. Staudter had a choice. And the choice that he made was to file a section 301 action. And because the union had breached its duty of fair representation, which we reached that hurdle in the summary judgment motion, that we should be allowed to proceed to a jury in this case and that the district court did have subject matter jurisdiction. That arbitration did not have to be completed because my client attempted under the long line of case law to exhaust the procedure. He was unable to do so because the union's breach of the duty of fair dealing for failure to investigate, failure to help him with the grievance, cutting and pasting at step two his own arguments, and then ultimately a termination that was without just cause, which showed that it was a termination, as I had stated in the facts and the records show, that it was a personal animus termination by Howard Modlin, which shows that it was an arguably meritorious grievance. For those reasons, my client did not have to arbitrate this case. He filed his 301 action. And we would ask that you reverse this back to the district court. Can I ask you a question just following up on some of Judge Thacker's questions? If we were to assume for a minute that the district court erroneously treated this whole exhaustion issue as jurisdictional and really it's an affirmative defense, do you have any position on whether if it's an affirmative defense that was properly preserved or whether it was raised too late in these proceedings? Because I guess it didn't even come up until after summary judgment had already been decided. So if it's not jurisdictional, that's a little bit late. Your Honor, in the joint appendix at 87 through 93, which was PATCO's answer, they did not, or it did not raise lack of jurisdiction as an issue as an affirmative defense. However, to be frank with the court, if this is a statutory lack of subject matter jurisdiction under 12b1, that can be raised by anyone at any time. I'm asking you, what if it's not? What if it's not a question of jurisdiction? What if it's just, you know, like in Title VII, you have to exhaust, but it doesn't go to the court's jurisdiction. It's just a rule. And it can be raised as an affirmative defense or waived. If it's more like a 12b6 failure, you know, to state a claim for relief, that would be very helpful for our position, of course, because neither RVA nor PATCO raised it as an affirmative defense in their answer. And the first time we ever saw a contention of lack of subject matter jurisdiction was when we were about 30 to 45 days out from trial, when we were getting ready to prepare our first trial order. But there's a difference, though, between an affirmative defense and failure to state a claim under 12b6. I don't think that the latter necessarily is automatically waived early on. You can raise that at any time, I think, in the hearing. That's just a statement. OK. OK. Thank you, Your Honor. But for these reasons about the breach of the duty, that it's not a jurisdictional issue per se, we would ask that you reverse it back to the district court and allow a jury to decide the issues as to breach of the duty of fair representation and whether this was a termination without just cause. Thank you very much. Thank you, Ms. Stroud. We appreciate the arguments of counsel. We will come down and greet counsel and recess for the day. This honorable court stands adjourned until tomorrow morning. God save the United States of this honorable court.
judges: Albert Diaz, Stephanie D. Thacker, Pamela A. Harris